DAVIS, Judge.
 

 *858
 
 In this appeal, we revisit the issue of how much factual information a law enforcement officer's affidavit must contain in order to establish probable cause for the issuance of a search warrant. Because we conclude that the affidavit at issue in this case lacked sufficient detail, we reverse the trial court's denial of the defendant's motion to suppress and vacate his conviction.
 

 Factual and Procedural Background
 

 On 29 July 2013 at 1:45 p.m., Sergeant Chadd Murray of the Rutherford County Sheriff's Office-along with several other law enforcement officers-went to the home of Jesse James Lenoir ("Defendant") in Forest City, North Carolina to conduct a knock and talk. Defendant's brother, David Lenoir ("David"), answered the door and invited the officers into the residence.
 

 Sergeant Murray asked David if there was anyone else in the house, and David responded that no one else was present. Sergeant Murray noticed that a light was on in a back bedroom and asked David if he could "check and make sure nobody was there" for the safety of the officers. David gave his consent, and Sergeant Murray walked to the back bedroom where he saw a woman lying on a bed. Sergeant Murray also observed a "glass smoke pipe" on a dresser in the bedroom.
 

 That same day, Sergeant Murray applied for a search warrant for the residence and submitted a supporting affidavit that stated, in its entirety, as follows:
 

 On July 29, 2013 I went to 652 Byers Road Lot 10 Forest City, N.C. for a knock and talk. Once at the residence I spoke with the tenant at the residence David Lenoir. Lenoir stated he and his brother Jesse Lenoir both lived there. David consented to a search of the residence and stated no one was inside the residence. In a back bedroom was Dawn Bradley sleeping and I could see a smoke pipe used for methamphetamine in plain view. The bedroom she was in belonged to Jessie [sic] Lenoir. Jessie [sic] was unable to be reached. Dawn would not admit to the smoke pipe being hers but she did stated [sic] Jessie [sic] and Rebecca Simmons stayed in that bedroom as well.
 

 *859
 
 Based upon this affidavit, a search warrant was issued.
 
 [1]
 
 The officers then conducted a search of the home and discovered a shotgun in the same bedroom where Sergeant Murray had observed the glass pipe. The weapon was hidden from view behind a "speaker box."
 

 *883
 
 On 31 July 2013, Sergeant Murray questioned Defendant about the shotgun, and Defendant admitted that the gun belonged to him. Defendant was subsequently indicted by a grand jury on 4 November 2013 for possession of a firearm by a felon. A jury trial was held on 16 March 2016 before the Honorable Robert G. Horne in Rutherford County Superior Court. Before the trial began, a hearing was held to address an oral motion to suppress made by Defendant. Despite the fact that the motion was not in writing, the State did not object on procedural grounds to its consideration by the trial court, and the court agreed to hear Defendant's motion. Following the arguments of counsel, the trial court orally denied the motion to suppress.
 

 At trial, counsel for Defendant failed to object to the admission of evidence as to the shotgun being found in the residence during the officers' search. On 16 March 2016, the jury found Defendant guilty of possession of a firearm by a felon. The trial court sentenced him to a term of 19 to 32 months imprisonment, suspended the sentence, and placed Defendant on supervised probation for 36 months.
 

 Defendant filed an untimely notice of appeal on 8 April 2018. However, he filed a petition for writ of
 
 certiorari
 
 on 12 September 2016, and this Court granted the petition on 22 September 2016.
 

 Analysis
 

 Defendant's sole argument on appeal is that the trial court erred by denying his motion to suppress. Specifically, he contends that the search warrant issued for his residence was not supported by probable cause based on the insufficiency of Sergeant Murray's supporting affidavit.
 

 As an initial matter, we must determine whether this issue was properly preserved for appeal. Defendant acknowledges that although he made a motion to suppress the evidence of the shotgun found in his
 
 *860
 
 home, he failed to object when the State sought to admit that evidence at trial. Our Supreme Court has explained that
 

 [t]o preserve an issue for appeal, the defendant must make an objection at the point during the trial when the State attempts to introduce the evidence. A defendant cannot rely on his pretrial motion to suppress to preserve an issue for appeal. His objection must be renewed at trial. [Defendant's] failure to object at trial waived his right to have this issue reviewed on appeal.
 

 State v. Golphin
 
 ,
 
 352 N.C. 364
 
 , 463,
 
 533 S.E.2d 168
 
 , 232 (2000) (internal citations omitted),
 
 cert. denied
 
 ,
 
 532 U.S. 931
 
 ,
 
 121 S.Ct. 1379
 
 , 1380,
 
 149 L.Ed. 2d 305
 
 (2001). Accordingly, Defendant has not properly preserved this issue for appellate review.
 

 However, in cases where a defendant fails to preserve for appellate review an issue relating to the suppression of evidence we conduct plain error review if the defendant specifically and clearly makes a plain error argument on appeal.
 
 State v. Waring
 
 ,
 
 364 N.C. 443
 
 , 467-68,
 
 701 S.E.2d 615
 
 , 631-32 (2010),
 
 cert. denied
 
 ,
 
 565 U.S. 832
 
 ,
 
 132 S.Ct. 132
 
 ,
 
 181 L.Ed. 2d 53
 
 (2011). Because Defendant expressly seeks such review in his appellate brief, we review for plain error the issue of whether probable cause existed to support the issuance of the search warrant obtained by Sergeant Murray.
 

 For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial. To show that an error was fundamental, a defendant must establish prejudice-that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty. Moreover, because plain error is to be applied cautiously and only in the exceptional case, the error will often be one that seriously affects the fairness, integrity or public reputation of judicial proceedings.
 

 State v. Lawrence
 
 ,
 
 365 N.C. 506
 
 , 518,
 
 723 S.E.2d 326
 
 , 334 (2012) (internal citations, quotation marks, and brackets omitted).
 

 In conducting plain error review, we must first determine whether the trial court did, in fact, err in denying Defendant's motion to suppress.
 
 See
 

 State v. Oxendine
 
 ,
 
 246 N.C. App. 502
 
 , ----,
 
 783 S.E.2d 286
 
 , 292,
 
 disc. review denied
 
 , --- N.C. ----,
 
 787 S.E.2d 24
 
 (2016) ("The first step under plain error review is ... to determine whether any error occurred at all.").
 

 *861
 

 *884
 
 Normally, "[t]he standard of review in evaluating the denial of a motion to suppress is whether competent evidence supports the trial court's findings of fact and whether the findings of fact support the conclusions of law."
 
 State v. Jackson
 
 ,
 
 368 N.C. 75
 
 , 78,
 
 772 S.E.2d 847
 
 , 849 (2015) (citation and quotation marks omitted). Here, however, the trial court summarily denied Defendant's motion to suppress without making any findings of fact or conclusions of law. Our Supreme Court has held that "only a material conflict in the evidence-one that potentially affects the outcome of the suppression motion-must be resolved by explicit factual findings that show the basis for the trial court's ruling. When there is no conflict in the evidence, the trial court's findings can be inferred from its decision."
 
 State v. Bartlett
 
 ,
 
 368 N.C. 309
 
 , 312,
 
 776 S.E.2d 672
 
 , 674 (2015) (internal citations omitted).
 

 "N.C. [Gen. Stat.] § 15A-244 requires that an application for a search warrant must contain (1) a probable cause statement that the items will be found in the place described, and (2) factual allegations supporting the probable cause statement."
 
 State v. Taylor
 
 ,
 
 191 N.C. App. 587
 
 , 589,
 
 664 S.E.2d 421
 
 , 423 (2008) (citation omitted). Furthermore, "the statements must be supported by one or more affidavits particularly setting forth the circumstances establishing probable cause to believe that the items are in the places or in the possession of the individuals to be searched."
 
 Id
 
 . (citation, quotation marks, and brackets omitted).
 

 In determining whether to issue a warrant, the magistrate must "make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place."
 
 State v. Arrington
 
 ,
 
 311 N.C. 633
 
 , 638,
 
 319 S.E.2d 254
 
 , 257-58 (1984) (citation omitted);
 
 see also
 

 State v. McCoy
 
 ,
 
 100 N.C. App. 574
 
 , 576,
 
 397 S.E.2d 355
 
 , 357 (1990) ("The standard for a court reviewing the issuance of a search warrant is whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant." (citation and quotation marks omitted) ).
 

 Probable cause ... means a reasonable ground to believe that the proposed search will reveal the presence upon the premises to be searched of the objects sought and that those objects will aid in the apprehension or conviction of the offender. Probable cause does not mean actual and positive cause, nor does it import absolute certainty. ... If the apparent facts set out in an affidavit for a search warrant are such that a reasonably discreet and prudent man
 
 *862
 
 would be led to believe that there was a commission of the offense charged, there is probable cause justifying the issuance of a search warrant.
 

 State v. Campbell
 
 ,
 
 282 N.C. 125
 
 , 128-29,
 
 191 S.E.2d 752
 
 , 755 (1972) (internal citation and quotation marks omitted). N.C. Gen. Stat. § 15A-245(a) provides that "information other than that contained in the affidavit may not be considered by the issuing official in determining whether probable cause exists for the issuance of the warrant unless the information is either recorded or contemporaneously summarized in the record or on the face of the warrant[.]" N.C. Gen. Stat. § 15A-245(a) (2017).
 

 In assessing the sufficiency of Sergeant Murray's affidavit, we find instructive several decisions from our appellate courts. In
 
 State v. Benters
 
 ,
 
 367 N.C. 660
 
 ,
 
 766 S.E.2d 593
 
 (2014), law enforcement officers with "extensive training and experience with indoor marijuana growing investigations" received an anonymous tip regarding the defendant's involvement in an indoor marijuana growing operation.
 

 Id.
 

 at 661
 
 ,
 
 766 S.E.2d at 596
 
 . After visiting the address referenced in the tip, the officers observed various gardening materials on the property including potting soil, fertilizer, and seed starting trays. However, they did not see any gardens or potted plants. Based upon their observations as set forth in an affidavit, a search warrant was issued for the property located at that address.
 

 Id.
 

 at 662-63
 
 ,
 
 766 S.E.2d at 596-97
 
 .
 

 In ruling that the affidavit in support of the search warrant application was insufficient to provide probable cause, our Supreme Court stated that it was "not convinced that these officers' training and experience are sufficient to balance the quantitative and
 
 *885
 
 qualitative deficit left by an anonymous tip ..., observations of innocuous gardening supplies, and a compilation of conclusory allegations."
 
 Id
 
 . at 673,
 
 766 S.E.2d at 603
 
 (citation omitted). With regard to the gardening items observed by law enforcement, the Court specifically noted that
 

 [n]othing [in the affidavit] indicates a fair probability that contraband or evidence of a crime will be found in a particular place beyond [the officer's] wholly conclusory allegations. The affidavit does not state whether or when the gardening supplies were, or appeared to have been, used, or whether the supplies appeared to be new, or old and in disrepair. Thus, amid a field of speculative possibilities, the affidavit impermissibly require[d] the magistrate to make what otherwise might be reasonable inferences
 
 *863
 
 based on conclusory allegations rather than sufficient underlying circumstances. This we cannot abide.
 

 Id.
 

 at 672
 
 ,
 
 766 S.E.2d at 602
 
 (internal citations and quotation marks omitted).
 

 State v. Beaver
 
 ,
 
 37 N.C. App. 513
 
 ,
 
 246 S.E.2d 535
 
 (1978), involved the warrantless seizure of a shot glass from the defendant's vehicle by a law enforcement officer during a routine traffic stop.
 
 Id.
 
 at 514-15,
 
 246 S.E.2d at 537
 
 . The shot glass contained a "film of a white substance appearing to be some type of white powder."
 
 Id
 
 . at 517,
 
 246 S.E.2d at 539
 
 . This Court held that the seizure was unsupported by probable cause, concluding as follows:
 

 [W]e cannot say that a white powder residue in a glass gives rise to facts of general knowledge or facts of a particular science so notoriously true as to support a reasonable belief on the part of the seizing officer that he was seizing contraband or evidence of a crime. We think that, absent specific testimony indicating particular knowledge on the part of the officer ..., a white powder residue in a glass must be taken as equally indicative of lawful substances and conduct as of contraband or unlawful conduct. Such would give rise to a mere suspicion, which will not support a finding of probable cause.
 

 Id.
 
 at 519,
 
 246 S.E.2d at 539-40
 
 (citation omitted).
 

 In the present case, Sergeant Murray's affidavit simply stated that he saw "a smoke pipe used for methamphetamine" in a bedroom in Defendant's house. It made no mention at all of Sergeant Murray's training and experience; nor did it present any information explaining the basis for his belief that the pipe was being used to smoke methamphetamine as opposed to tobacco. In addition, the affidavit did not explain how Sergeant Murray was qualified to distinguish between a pipe being used for lawful-as opposed to unlawful-purposes. Indeed, the affidavit did not even purport to describe in any detail the appearance of the pipe or contain any indication as to whether it appeared to have recently been used. It further lacked any indication that information had been received by law enforcement officers connecting Defendant or his home to drugs.
 

 As with the gardening supplies in
 
 Benters
 
 and the white residue in
 
 Beaver
 
 , a pipe-standing alone-is neither contraband nor evidence of a crime. Rather, the pipe referenced in Sergeant Murray's affidavit
 
 *864
 
 "must be taken as equally indicative of lawful substances and conduct as of contraband or unlawful conduct."
 
 Beaver
 
 ,
 
 37 N.C. App. at 519
 
 ,
 
 246 S.E.2d at 540
 
 .
 

 While the State cites
 
 State v. Lowe
 
 ,
 
 369 N.C. 360
 
 ,
 
 794 S.E.2d 282
 
 (2016), in support of its contention that the warrant obtained by Sergeant Murray was properly issued, that case is inapposite. In
 
 Lowe
 
 , our Supreme Court held that probable cause supported the issuance of a search warrant where (1) the investigating officer received an anonymous tip that the defendant was selling and storing narcotics at his house; (2) the affidavit in support of the warrant listed the officer's training and experience; and (3) the officer discovered marijuana residue in a garbage bag outside the defendant's residence.
 
 Id
 
 . at 361-62,
 
 794 S.E.2d at 283-84
 
 .
 

 Noting that the affidavit "presented the magistrate with direct evidence of the crime for which the officers sought to collect evidence[,]" the Court ruled that "under the totality of the circumstances there was a substantial basis for the issuing magistrate to conclude that probable cause existed."
 

 *886
 

 Id
 
 . at 365-66,
 
 794 S.E.2d at 286
 
 (citation and quotation marks omitted). The Supreme Court distinguished its ruling in
 
 Lowe
 
 from its prior decision in
 
 Benters
 
 by noting that "[a]lthough there were many reasons the gardening equipment may have been outside the defendant's house in
 
 Benters
 
 , the presence of marijuana residue in defendant's trash offers far fewer innocent explanations."
 

 Id.
 

 at 365
 
 ,
 
 794 S.E.2d at 286
 
 (citation and quotation marks omitted).
 

 Here, given the absence of additional information in Sergeant Murray's affidavit to support his bare assertion that the pipe was "used for methamphetamine," we hold that the affidavit was insufficient to establish probable cause for the issuance of the search warrant. Accordingly, the trial court erred in denying Defendant's motion to suppress.
 

 Having determined that the trial court erred, we now turn to the issue of whether the error rose to the level of plain error. Defendant was convicted of possession of a firearm by a felon. His conviction was based solely upon the discovery of a shotgun in his home. There is no indication in the record that Sergeant Murray saw the gun-which was hidden from view-prior to seeking the search warrant. Rather, the gun was found only once the search warrant had been obtained and was being executed by the officers.
 
 [2]
 

 *865
 
 Thus, the trial court's denial of Defendant's motion to suppress necessarily had a probable impact on his conviction because the jury could not have convicted Defendant of possession of a firearm by a felon but for the admission of evidence concerning the shotgun seized during the execution of the search warrant.
 
 See
 

 State v. Canty
 
 ,
 
 224 N.C. App. 514
 
 , 521,
 
 736 S.E.2d 532
 
 , 537 (2012) ("Without the search, no weapons would have been found. Without the weapons, Defendant could not have been convicted of ... possession of a firearm by a convicted felon."),
 
 disc. review denied
 
 ,
 
 366 N.C. 578
 
 ,
 
 739 S.E.2d 850
 
 (2013). Therefore, we hold that the trial court's denial of Defendant's motion to suppress amounted to plain error.
 
 [3]
 

 Conclusion
 

 For the reasons stated above, we reverse the trial court's denial of Defendant's motion to suppress and vacate his conviction for possession of a firearm by a felon.
 

 REVERSED AND VACATED.
 

 Judges STROUD and ARROWOOD concur.
 

 [1]
 

 Approximately three hours after obtaining and executing this search warrant, Sergeant Murray obtained a second search warrant for the residence. However, the State did not offer at Defendant's trial any evidence that was seized by the officers while they were executing the second warrant. Therefore, we confine our review to the first search warrant obtained by Sergeant Murray.
 

 [2]
 

 Indeed, the State makes no argument that the shotgun would have been discovered by law enforcement officers even in the absence of the search warrant obtained by Sergeant Murray.
 

 [3]
 

 Based on our holding, we need not reach Defendant's additional argument that he received ineffective assistance of counsel based on his trial counsel's failure to object at trial to the evidence obtained as a result of the search warrant.