IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-832

Filed 2 April 2024

Wake County, Nos. 20CRS50905, 22CRS180–81, 50426–27

STATE OF NORTH CAROLINA

v.

ROBERTO ANASTASIO HERNANDEZ, Defendant.

Appeal by defendant from judgments entered 20 January 2023 by Judge Jerry R. Tillett in Dare County Superior Court. Heard in the Court of Appeals 6 March 2024.

> *Attorney General Joshua H. Stein, by Special Deputy Attorney General Stephanie A. Brennan, for the State.*
>
> *Sarah Holladay, for defendant-appellant.*

FLOOD, Judge.

Roberto Anastasio Hernandez ("Defendant") appeals from convictions for three counts of statutory rape of a person who is fifteen years of age or younger, one count of statutory sex offense of a person who is fifteen years of age or younger, three counts of indecent liberties with a child, and one count of kidnapping. Defendant argues on appeal: (A) the trial court plainly erred in denying his motion to suppress the fruits of the two search warrants where the supporting affidavits failed to allege any nexus between the items sought and the crime being investigated; (B) Defendant alternatively received ineffective assistance of counsel ("IAC") where defense counsel

failed to object at trial to the introduction of evidence related to Defendant's suppression motion; and (C) the trial court violated Defendant's right to be free of double jeopardy. After careful review, we conclude the affidavits supported a proper finding of probable cause, and as such the trial court did not plainly err, nor did Defendant receive IAC. Regarding Defendant's third argument, however, we conclude the trial court violated Defendant's right to be free of double jeopardy. We therefore vacate and remand the trial court's sentencing order for a resentencing hearing.

## I. **Factual and Procedural Background**

In July 2020, J.G.[1]—a thirteen-year-old girl—reported to the police that Defendant, a family associate, took her from her family's home in the middle of the night and without her parents' permission, and drove her to his house. J.G. further reported that, at his residence, Defendant showed her a sex toy, asked her to wear a black dress, and vaginally raped her.

Based on J.G.'s report and after verifying Defendant's address, Officer Darrel Gray sought and obtained from a magistrate a search warrant dated 29 July 2020 (the "July Warrant") for Defendant's address. Officer Gray's affidavit in support of the July Warrant (the "July Affidavit"), in the "Probable Cause" section, describes J.G.'s account of her alleged kidnapping from her parents' home by Defendant and

---

[1] A pseudonym is used to protect the identity of the minor child in keeping with N.C.R. App. P. 42.

her subsequent rape at Defendant's residence, as well as her account of what she saw at the residence. The July Affidavit further describes Officer Gray's six years of experience as a law enforcement officer with Dare County, and his seventeen years of law enforcement experience with the Coast Guard. Included under the "Items to be Seized" section of the July Affidavit are:

> a. Cellular telephones, tablets, gaming systems capable of recording and/or taking pictures and accessing or storing digital media files, and/or capable of internet access.
>
> b. Computers, and computer related storage media to include, but not limited to hard drives, CD disks, DVD disks, thumbdrives, memory sticks, iPods, personal digital assistant (PDA), flash media, diskettes, routers and other magnetic, electronic or optical media.
>
> c. Security cameras and any storage device associated with it.
>
> d. Any and all items that [J.G.] may have been in contact with to include but not limited to; bed sheets/ comforters, pillow cases, lamps, suspect clothing and vehicle seats for the purpose of obtaining fingerprints or DNA.
>
> e. Any and all items that [J.G.] described inside the residence that would show intimate knowledge [J.G.] was inside the residence and more specifically the suspect's bedroom, to include but not limited to; sexual toys as described the victim to be a penis shaped dildo, condoms, female clothing described as a black dress with shoulder straps, knives, long rifles and lamp.
>
> f. Any and all Records indicating the identity of the suspect and/or current residents or owners of the property being searched, including but not limited to: Utility bills or records, tax bills or records, mail bearing the address being searched, driver's license, passports and ID's issued by

other countries.

Regarding these listed items, Officer Gray provided in the application for the search warrant that "[t]here is probable cause to believe that [the items to be seized] . . . constitute[] evidence of the crimes of second degree kidnapping and statutory rape of a person who is thirteen, fourteen, or fifteen, and of the identity of a person participating in" said crimes. Officers executed the July Warrant and searched Defendant's residence, where they obtained, *inter alia*, a "hi-def recorder"—or DVR—connected to Defendant's home security cameras, a GoPro camera, and an SD card associated with the GoPro camera.

Officer Gray sought and obtained a second search warrant dated 4 August 2020 (the "August Warrant") to access the contents of the electronic items seized from Defendant's residence. The affidavit in support of the August warrant (the "August Affidavit") describes Officer Gray's experience as a law enforcement officer, and lists several items found in the residence that were to be searched, including cell phones, storage devices, and other electronic devices. The "Items to be Seized" section of the August Affidavit includes, among other digital items to be seized, "audio and video clips related to the above-described criminal activity and further described in this affidavit in support of the search warrant, for the above-described item(s)." Among the "above-described item(s)" are three SD cards, as well as two DVRs. The "Probable Cause" portion of the August Affidavit describes the reported kidnapping and rape of J.G., and states that Officer Gray "know[s] from [his] training and experience" that

cellular phones are often used to record, discuss, or facilitate sex crimes.

Officers executed the August Warrant and searched the DVR as well as the SD card associated with the GoPro Camera. The DVR revealed a video of Defendant engaging in sexual acts with K.L.,[2] who, at the time, was a thirteen-year-old girl living with her mother in a rented room of Defendant's residence. On the SD card, officers found a video of Defendant having vaginal intercourse with W.R.,[3] who was an employee of Defendant's painting business and was, at the time of the recording, either fifteen or sixteen years of age.

Following the officers' execution of the August Warrant, Defendant was served with bills of indictment charging him with three counts of statutory rape of a child less than or equal to fifteen-years-old, one count of statutory sex offense with a child less than or equal to fifteen-years-old, three counts of indecent liberties with a child, and one count of first-degree kidnapping.

Prior to trial, Defendant filed several motions to suppress the digital evidence obtained by law enforcement. As to the July Warrant, Defendant alleged that the warrant was overbroad because it authorized seizure of, *inter alia*, the relevant DVR and SD card, when nothing in the July Affidavit indicated that such items were related to the crime being investigated. As to the August Warrant, Defendant alleged

---

[2] A pseudonym is used to protect the identity of the minor child in keeping with N.C.R. App. P. 42.

[3] A pseudonym is used to protect the identity of the alleged victim in keeping with N.C.R. App. P. 42.

that the contents of the DVR and SD card should be suppressed as fruit of the poisonous tree, and because the August Affidavit failed to allege these devices were likely to contain evidence of the crime being investigated. Defendant further moved to suppress statements obtained from K.L. and W.R., alleging these statements were obtained solely as a result of unlawful seizure and search of the DVR and SD card.

This matter came before the trial court on 17 January 2023. At trial, before the first witness—W.R.—testified, Defendant objected and asked the trial court that he be heard on the motions to suppress, but the trial court overruled the objection. W.R. then testified, without objection from Defendant, that Defendant pressured her into sex on multiple occasions starting when she was fifteen-years-old, and that she had sex with him so as to keep her job with his painting business. The video showing Defendant performing sexual acts with W.R. was admitted and shown to the jury. Defendant objected to the video on the grounds that it was not dated and therefore did not necessarily show evidence of a crime, but did not object on the basis of suppression. After W.R. testified, the trial court heard Defendant's suppression motions, whereupon Defendant and the State agreed there were no factual issues requiring an evidentiary hearing. The trial court did not rule on the motion to suppress until the third day of the trial.

Prior to the trial court ruling on the motions to suppress, J.G. and K.L. each testified. J.G. testified, without objection, that Defendant came to her house at night and told her to come with him, and explained that she went with him because she

thought he might be armed, and she feared for her family's safety. K.L. testified, without objection, that Defendant gave her marijuana and had sexual intercourse with her, and that he also demanded she give him oral sex, which she provided once. The DVR video that showed Defendant performing sexual acts with K.L. was admitted and shown to the jury, without objection.

Following testimonies from J.G. and K.L., the trial court denied Defendant's motions to suppress. In support of its denial, the trial court found that, as the July and August Affidavits in respective support of application for the July and August Warrants contain "affirmation[s] that the property that is sought to be located, searched, or seized constitutes evidence of a crime and identifications of a person," there was probable cause to believe that the items sought in the search were relevant to the crime being investigated. The trial court further found that, as the Affidavits specify the firsthand account of an alleged victim of sexual assault, and describe details of the of the incident and the location of the alleged sexual assault as the location for the search, there was a "strong nexus" between the location of the search and the place where the alleged crime occurred, and therefore probable cause to issue the Warrants. The trial court noted that, "while certain items may have been [omitted] such as a conclusory affirmation that from [Officer Gray's] training[] and experience there may be evidence[,]" it was "commonsensical or reasonable" for the magistrate to have determined this information, and the magistrate had a "substantial basis for concluding that probable cause existed."

The trial court found, in the alternative, that the search was incident to lawful arrest because Defendant had been arrested and taken into custody upon execution of the July Warrant. The trial court also found, in the further alternative, that the statutory good faith exception applied where Officer Gray was acting upon a magistrate's order.

Following denial of Defendant's motions to suppress, Defendant testified on his own behalf. Defendant admitted to picking up J.G. from her family's home at night and bringing her to his home, but denied any sexual acts with her. Defendant admitted that the video showing him and K.L. depicted him touching her and kissing her inner thigh. Defendant further admitted to a sexual relationship with W.R., but claimed he believed she was sixteen at the time of the video recording found on the SD card.

After the close of evidence, the trial court instructed the jury and provided in its instructions, *inter alia*, that Defendant could be found guilty of first-degree kidnapping only if he removed J.G. from her home to facilitate the crime of statutory rape or indecent liberties. On 20 January 2023, the jury returned verdicts finding Defendant guilty on all counts, and the trial court thereafter entered eight separate written judgments—where it made no written findings—sentencing Defendant within the presumptive range for each offense to several consecutive sentences totaling 1,081 to 1,627 months' imprisonment. One of the judgments for indecent liberties was later amended to reflect the correct sentence of sixteen to twenty-nine

months' imprisonment, instead of 240 to 348 months' imprisonment. On 24 January 2023, Defendant provided written notice of appeal, in which he mistakenly listed the date of entry of the trial court's judgments as 21 January 2023, rather than the correct date of 20 January 2023.

## II. Jurisdiction

As an initial matter, Defendant's written notice of appeal contains a defect in its listing of the date of the trial court's judgments, and Defendant therefore failed to properly take appeal to this Court. *See* N.C.R. App. P. 4(b) (a notice of appeal shall "designate the judgment or order from which appeal is taken"); *see also State v. Hughes*, 210 N.C. App. 482, 484, 707 S.E.2d 777, 778 (2011) ("A default precluding appellate review on the merits necessarily arises when the appealing party fails to complete all of the steps necessary to vest jurisdiction in the appellate court." (citations omitted) (cleaned up)). In addition to his appellate brief, Defendant has filed a concurrent petition for writ of certiorari ("PWC"), in which he asks this Court to issue this discretionary writ to consider his claims on the merits.

As this Court has consistently provided, though we may issue a writ of certiorari to review a trial court's order or judgment when the right to prosecute an appeal has been lost by failure to adhere to appellate procedure, under N.C.R. App. P. 21(a)(1) the defendant's petition must show "merit or that error was probably committed below[.]" *State v. Ricks*, 378 N.C. 737, 741, 862 S.E.2d 835, 839 (2021) (citation and internal quotation marks omitted).

Here, as explained in further detail below, we conclude Defendant in his PWC has demonstrated merit or that error was probably committed by the trial court. We therefore allow this discretionary writ and proceed to the merits of Defendant's appeal. *See Ricks*, 378 N.C. at 741, 862 S.E.2d at 839; *see also* N.C.R. App. P. 21(a)(1).

## III. <u>Analysis</u>

Defendant presents three arguments on appeal: (A) the trial court plainly erred in denying his motion to suppress the fruits of the Warrants that failed to allege any nexus between the items sought and the crime being investigated; (B) Defendant alternatively received IAC, where trial counsel failed to object at trial to the introduction of evidence related to Defendant's suppression motion; and (C) the trial court violated Defendant's right to be free of double jeopardy. We address each argument, in turn.

### A. Motion to Suppress

Defendant argues the trial court plainly erred in denying his motion to suppress the evidence obtained as a result of the Warrants, as the Affidavits failed to allege any nexus between the items sought and the crime being investigated. After careful consideration, we disagree.

#### 1. <u>Standard of Review</u>

As Defendant concedes, he failed to renew his suppression objections when the State admitted the relevant evidence before the trial court, and Defendant therefore failed to preserve this issue for our review. *See State v. Powell*, 253 N.C. App. 590,

593, 800 S.E.2d 745, 748 (2017) ("[T]o preserve an issue for appeal, the defendant must make an objection at the point during the trial when the State attempts to introduce the evidence. A defendant cannot rely on his pretrial motion to suppress to preserve an issue for appeal. His objection must be renewed at trial."). As we have consistently provided, however, "to the extent a defendant fails to preserve issues relating to his motion to suppress, we review for plain error if the defendant specifically and distinctly assigns plain error on appeal." *Id.* at 594, 800 S.E.2d at 748 (citation and internal quotation marks omitted) (cleaned up). Defendant here specifically and distinctly assigns plain error, and we therefore review the trial court's denial of Defendant's motion to suppress for plain error. *See id.* at 594, 800 S.E.2d at 748.

"For error to constitute plain error, a defendant must demonstrate that a fundamental error occurred at trial." *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012) (citation omitted). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error had a probable impact on the jury's finding that the defendant was guilty." *Id.* at 518, 723 S.E.2d at 334 (citation and internal quotation marks omitted). As plain error is to be "applied cautiously and only in the exceptional case, the error will often be one that seriously affects fairness, integrity or public reputation of judicial proceedings[.]" *Id.* at 518, 723 S.E.2d at 334 (citation and internal quotation marks omitted) (cleaned up). "In conducting plain error review, we must first determine

whether the trial court did, in fact, err in denying Defendant's motion to suppress." *State v. Lenoir*, 259 N.C. App. 857, 860, 816 S.E.2d 880, 883 (2018) (citation omitted).

This Court reviews "an order denying a motion to suppress to determine whether the trial court's underlying findings of fact are supported by competent evidence . . . and whether those factual findings in turn support the trial court's ultimate conclusions of law[,]" and "[w]e review *de novo* a trial court's conclusion that a magistrate had probable cause to issue a search warrant." *State v. Worley*, 254 N.C. App. 572, 576, 803 S.E.2d 412, 416 (2017) (citations and internal quotation marks omitted) (cleaned up).

"In determining whether probable cause exists to issue a search warrant, a magistrate must make a practical, common-sense decision based on the totality of the circumstances, whether there is a fair probability that evidence will be found in the place to be searched[,]" and this Court accords "great deference" to a magistrate's determination of probable cause. *Id.* at 576, 803 S.E.2d at 416 (citation and internal quotation marks omitted) (cleaned up). This Court's role "is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *Id.* at 576, 803 S.E.2d at 416 (internal quotation marks omitted) (citation omitted).

### 2. Probable Cause for Issuance of a Search Warrant

Under the law of our State, for a search warrant to be properly issued to a police officer, "the facts set out in the supporting affidavit must show some connection or nexus linking" the items sought to alleged illegal activity. *State v. Bailey*, 374 N.C.

332, 335, 841 S.E.2d 277, 280 (2020). A supporting affidavit is sufficient and establishes probable cause where it gives the magistrate "reasonable cause to believe that the search will reveal the presence of the [items] sought on the premises described in the [warrant] application[,]" and that those items "will aid in the apprehension or conviction of the offender." *State v. Bright*, 301 N.C. 243, 249, 271 S.E.2d 368, 372 (1980); *see State v. McKinney*, 368 N.C. 161, 164, 775 S.E.2d 821, 824 (2015) ("A magistrate must make a practical, common-sense decision, based on the totality of the circumstances, whether there is a 'fair probability' that contraband will be found in the place to be searched." (citation and internal quotation marks omitted)).

In determining whether an applying officer has demonstrated probable cause, a magistrate may "draw such reasonable inferences as he will from the material supplied to him by applicants for a warrant[.]" *State v. Riggs*, 328 N.C. 213, 221, 400 S.E.2d 429, 434 (1991) (citation and internal quotation marks omitted). "To that end, it is well settled that whether probable cause has been established is based on factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." *State v. Sinapi*, 359 N.C. 394, 399, 610 S.E.2d 362, 365 (2005) (citation and internal quotation marks omitted) (cleaned up). While a magistrate may employ such reasonable inference in determining probable cause, he may not "lawfully issue a search warrant based on an affidavit that is 'purely conclusory' and that does not state the underlying circumstances allegedly giving rise

to probable cause." *State v. Allman*, 369 N.C. 292, 294, 794 S.E.2d 301, 303–04 (2016) (quoting *Bright*, 301 N.C. at 249, 271 S.E.2d at 372).

Our Supreme Court's decision in *State v. Campbell* is illustrative of what may render an affidavit in support of a search warrant "purely conclusory." 282 N.C. 125, 127, 191 S.E.2d 752, 754 (1972). In *Campbell*, the defendant appealed from the trial court's dismissal of his challenge to the competency of evidence, arguing that, as the affidavit in support of the search warrant application failed to demonstrate probable cause, the challenged evidence was impermissibly obtained. In holding that the affidavit did not provide a sufficient basis for a finding of probable cause, our Supreme Court concluded that the officer's affidavit in support of the warrant application was "purely conclusory[,]" as "[i]t detail[ed] no underlying facts and circumstances from which the issuing officer could find that probable cause existed [t]o search the premises described. The affidavit implicates those premises [s]olely as a conclusion of the affiant." *Id.* at 131, 191 S.E.2d at 756–57. In further support of this conclusion, our Supreme Court provided, "[n]owhere in the affidavit is there any statement that [the evidence sought was] ever possessed or sold in or about the dwelling to be searched[,]" *and* "[n]owhere in the affidavit are any underlying circumstances detailed from which the magistrate could reasonably conclude that the proposed search would reveal the presence of [the evidence sought] in the dwelling." *Id.* at 131, 191 S.E.2d at 757.

Although a search warrant may not properly issue where the supporting

affidavit is purely conclusory, our Supreme Court's decision in *Allman* provides an apt illustration of how a supporting affidavit, while not *directly* establishing a connection between evidentiary items sought and illegal activity, may still be sufficient to establish the nexus necessary for a probable cause determination. 369 N.C. at 298, 794 S.E.2d at 305–06. In *Allman*, the defendant and two other individuals were pulled over while riding together in a car, and a subsequent search of the vehicle revealed a large quantity of marijuana and over $1,600 in cash. *Id.* at 292–93, 794 S.E.2d at 302. Following discovery of the marijuana and cash, an officer applied for a warrant to search the defendant's home for evidence of drug dealing, and provided in his supporting affidavit that, *inter alia*: (1) large quantities of drugs and cash were found in the vehicle; (2) two of the individuals occupying the vehicle had a history of drug-related criminal offenses; and (3) the occupants of the vehicle had lied to the arresting officers about where they lived. *Id.* at 295–96, 794 S.E.2d at 304–05. The affidavit also stated, "based on [the officer's] training and experience, that drug dealers typically keep evidence of drug dealing at their homes[.]" *Id.* at 295–96, 794 S.E.2d at 304. A magistrate issued the search warrant, a search of the defendant's residence revealed the presence of illegal drugs and drug paraphernalia, and the defendant was charged, tried, and convicted. *Id.* at 292–93, 296, 794 S.E.2d at 302, 305.

The defendant appealed from the trial court's denial of her motion to suppress evidence, arguing that the warrant was not supported by probable cause. *Id.* at 293,

794 S.E.2d at 302. This matter eventually came before our Supreme Court, and based on the facts contained in the affidavit when viewed in light of the officer's training and experience, the Court, while acknowledging that "nothing in [the officer's] affidavit directly linked [the] defendant's home with evidence of drug dealing[,]" provided that such "direct evidence" is not always necessary to establish probable cause. *Id.* at 297, 794 S.E.2d at 305. Our Supreme Court therefore concluded "it was reasonable for the magistrate to infer that there could be evidence of drug dealing" found at the defendant's residence, and found no error in the trial court's denial of the defendant's motion to suppress. *Id.* at 296–97, 794 S.E.2d at 305. Thus, an affidavit that is "purely conclusory" is insufficient to establish probable cause, *Campbell*, 282 N.C. at 130–31, 191 S.E.2d at 756–57, but one that draws a connection—even if indirectly—between an officer's training and experience and his belief that a search will yield incriminating evidence *is* sufficient to establish probable cause. *See Allman*, 369 N.C. at 295–96, 794 S.E.2d at 304–05.

In the instant case, Defendant challenges the trial court's oral finding that the Affidavits supported issuance of the Warrants for probable cause, and contends, more specifically, that the "trial court's findings of fact were not supported by competent evidence and its conclusions of law were neither supported by the evidence nor legally correct." We disagree with Defendant's contention.

The trial court in its eight written judgments made no written findings, but made extensive oral findings at the conclusion of trial. Defendant does not challenge

on appeal the trial court's finding of a nexus between the location of the search—Defendant's residence and bedroom—and alleged criminal conduct. As such, relevant to this appeal is the trial court's finding that the State demonstrated probable cause to search and seize the Affidavits' "Items to be Seized," as the Affidavits contain "affirmation[s] that the property that is sought to be located, searched, or seized constitutes evidence of a crime and identifications of a person[.]"

The magistrate, in issuing the Warrants, relied on the information contained in each of the respective Affidavits, and we conduct our *de novo* review to determine whether, under the totality of the circumstances and per the content of the Affidavits, the magistrate "had a substantial basis for concluding that probable cause existed." *Worley*, 254 N.C. App. at 576, 803 S.E.2d at 416 (citation and internal quotations omitted); *see also Allman*, 369 N.C. at 293, 794 S.E.2d at 303. We consider the content of the July Affidavit and the August Affidavit, in turn.

a. *The July Affidavit*

Regarding issuance of the July Warrant, Defendant contends that, as the July Affidavit's "Probable Cause" section contains no mention of the electronic items listed in its "Items to be Seized" section, no explanation of why Officer Gray thought the listed items might be in the home and relevant to investigation, and no allegation that an electronic device was used in commission of the alleged crimes, the July Affidavit fails to establish any nexus between the alleged crime and the electronic items.

In support of the July Warrant application, the July Affidavit contains in its "Probable Cause" section a description of J.G.'s account of her alleged kidnapping from her parents' home by Defendant and subsequent rape at Defendant's residence, as well as of her account of what she saw at the residence. Further, the July Affidavit provides an attestation of Officer Gray's training and experience, and includes under its "Items to be Seized" section, in relevant part, the following electronic items:

> a. Cellular telephones, tablets, gaming systems *capable of recording and/or taking pictures* and accessing or storing digital media files, and/or capable of internet access.
>
> b. Computers, and computer related storage media to include, *but not limited to hard drives*, CD disks, DVD disks, thumbdrives, memory sticks, iPods, personal digital assistant (PDA), flash media, diskettes, routers and *other magnetic, electronic or optical media*.
>
> c. Security cameras and any *storage device associated with [them]*.

(Emphasis added). Regarding these electronic items, Officer Gray provided in the application for the July Warrant that there is probable cause to believe these items constitute evidence of the alleged crimes, as well as evidence of the perpetrator's identity. Upon executing the July Warrant, officers seized, *inter alia*, a DVR connected to Defendant's home security cameras, a GoPro camera, and an SD card associated with the GoPro camera.

As a threshold matter, while not fully developed in Defendant's brief on appeal, we address the sufficiency of the July Affidavit's description of the "Items to be

Seized"—specifically, as it concerns the DVR and relevant SD card. While the DVR and relevant SD card ultimately seized by officers were not listed by name in the July Affidavit as "Items to be Seized," our Supreme Court has provided that a "description of property is sufficient when it is as specific as the circumstances and nature of the activity that is under investigation permit." *State v. Kornegay*, 313 N.C. 1, 16, 326 S.E.2d 881, 894 (1985) (citation omitted). Given the "nature and circumstances" of this case, with the State's knowledge of Defendant's residence and the contents therein being derived solely from the account of J.G.—a minor and alleged sexual assault victim—the particularity of the July Affidavit's "Item to be Seized" descriptions "is all that can reasonably be expected" in a case of this nature, such that "security cameras and any storage device associated with [them]" sufficiently describes the DVR, and "storage media to include, but not limited to hard drives . . . and other magnetic, electronic or optical media" sufficiently describes the relevant SD card. *See id.* at 18, 326 S.E.2d at 895 ("The warrants and applications show the rough outline of [the] defendant's activities which is all that can be reasonably expected from the State in a case of this nature."). As the July Affidavit sufficiently describes the evidence seized, we now consider whether the State presented competent evidence of a nexus between said evidence and the criminal condcut alleged against Defendant. *See Bailey*, 374 N.C. at 335, 841 S.E.2d at 280.

Although the July affidavit, like the affidavit in *Allman*, does not *directly* establish a connection between the items sought and the alleged criminal activity, *see*

*Allman*, 369 N.C. at 296–97, 794 S.E.2d at 304–05, it is unlike the affidavit in *Campbell* because the July Affidavit is not so lacking in underlying facts and circumstances such that a reasonably prudent magistrate could not find the existence of probable cause. *See Campbell*, 282 N.C. at 130–31, 191 S.E.2d at 756–57; *see Bright*, 301 N.C. at 249, 271 S.E.2d at 372. With its "Probable Cause" description of J.G.'s account of the alleged crime committed by Defendant and at his residence, the July Affidavit presented the underlying circumstances upon which Officer Gray premised his belief that probable cause existed to search Defendant's residence, and seize therein, as evidence of the criminal conduct alleged to have occurred *at the residence*, the listed "Items to be Seized." As such, like the affidavit in *Allman* and unlike the affidavit in *Campbell*, the July Affidavit presented to the magistrate the underlying circumstances allegedly giving rise to, and necessary for a proper determination of, probable cause. *See Allman*, 369 N.C. at 296–97, 794 S.E.2d at 304–05; *see Campbell* 282 N.C. at 130–31, 191 S.E.2d at 756–57.

In *Allman*, our Supreme Court concluded the supporting affidavit properly established probable cause to search for narcotics in the defendant's home where it: (1) contained the underlying circumstances giving rise to probable cause; *and* (2) provided, "based on [the officer's] training and experience[,] that drug dealers typically keep evidence of drug dealing at their homes[.]" 369 N.C. at 295–96, 794 S.E.2d at 305; *see also Bright*, 301 N.C. at 249, 271 S.E.2d at 372. The July Affidavit's training and experience attestation, by contrast, contains no explanation of how

Officer Gray's training and experience informed his belief that a search of Defendant's residence would reveal the electronic items, or that said items would aid in the apprehension or conviction of Defendant. Though this lack of explanation could suggest a deficient basis for a finding of probable cause, we do not find that the July Affidavit is "purely conclusory" such that issuance of the July Warrant was improper. *See Campbell*, 282 N.C. at 130–31, 191 S.E.2d at 756–575. Under our standard of review, while according "great deference" to his decision to issue the July Warrant, we must determine whether the magistrate properly found the existence of probable cause. *Riggs*, 328 N.C. at 221, 400 S.E.2d at 434.

For a supporting affidavit to establish probable cause, it must give a magistrate reasonable cause to believe, with fair probability, "that the search will reveal the presence of the [items] sought on the premises described in the [warrant] application[,]" and that those items "will aid in the apprehension or conviction of the offender." *Bright*, 301 N.C. at 249, 271 S.E.2d at 372; *see also McKinney*, 368 N.C. at 164, 775 S.E.2d at 824. A supporting affidavit establishes such reasonable cause where, from the contents of the affidavit, "it was reasonable for the magistrate to infer" that a search would reveal evidence of the alleged crime. *Allman*, 369 N.C. at 296–97, 794 S.E.2d at 304–05. In assessing a magistrate's reasonable inferences, we contemplate not the considerations upon which "legal technicians" act, but rather "factual and practical considerations of everyday life on which reasonable and prudent persons . . . act[,]" and the reasonable inferences such persons draw therein.

- 21 -

*Sinapi*, 359 N.C. at 399, 610 S.E.2d at 365–66 (citation omitted); *see also Riggs*, 328 N.C. at 221, 400 S.E.2d at 434; *Bright*, 301 N.C. at 249, 271 S.E.2d at 372; *McKinney*, 368 N.C. at 164, 775 S.E.2d at 824.

As set forth above, the July Affidavit presented to the magistrate the following circumstances related to Defendant's—at the time alleged—criminal conduct and in support of probable cause: Defendant, by J.G.'s account, kidnapped her from her parents' home and against her will, and took her to his residence, where he raped her. The July Affidavit further contained a list of electronic items sought as "Items to be Seized[,]" and in his application for the July Warrant, Officer Gray plainly articulated that there is probable cause to believe these items constitute evidence of Defendant kidnapping and raping J.G. In light of our standard of review, we conclude the July Affidavit was such that the magistrate could infer a search of Defendant's residence would reveal the relevant electronic items, because a reasonable and prudent person, employing the practical and factual considerations of everyday life, would expect to find such electronic items in a personal residence. *See Riggs*, 328 N.C. at 221, 400 S.E.2d at 434; *see Sinapi*, 359 N.C. at 399, 610 S.E.2d at 365–66. As we conclude the magistrate could draw this reasonable inference, and as the July Affidavit contained the underlying circumstances giving rise to a belief in the incriminating nature of the electronic items sought, we further conclude the magistrate had reasonable cause to believe, with fair probability, that the electronic items seized from Defendant's residence would be of an incriminating nature, and

therefore aid in the apprehension or conviction of Defendant. *See Bright*, 301 N.C. at 249, 271 S.E.2d at 372; *see also McKinney*, 368 N.C. at 164, 775 S.E.2d at 824.

Despite its failure to establish an explicit connection between Officer Gray's training and experience and his belief in the existence of probable cause, as the July Affidavit gave the magistrate the necessary reasonable cause, the July Affidavit was not "purely conclusory[.]" *Campbell*, 282 N.C. at 130–31, 191 S.E.2d at 756–57. Rather, according great deference to the magistrate's determination of probable cause, we conclude under the totality of the circumstances that the July Affidavit sufficiently established a nexus linking the electronic items sought to the illegal activity, and that the magistrate therefore had a substantial basis for concluding probable cause existed. *See Worley*, 254 N.C. App. at 576, 803 S.E.2d at 416; s*ee also Bailey*, 374 N.C. at 335, 841 S.E.2d at 280; *Allman*, 369 N.C. at 296–97, 794 S.E.2d at 304–05.

Accordingly, the trial court's finding of fact that the State met its evidentiary burden is supported by competent Record evidence, which in turn supports the trial court's conclusion of law that the July Warrant was properly issued. *See Worley*, 254 N.C. App. at 576, 803 S.E.2d at 416. The trial court's denial of Defendant's motion to suppress the fruits of the July Warrant was not error, and certainly not plain error. *See id.* at 576, 803 S.E.2d at 416; *see also Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

b. *The August Affidavit*

Regarding issuance of the August Warrant, Defendant contends that, while the "Probable Cause" section of the August Affidavit contains Officer Gray's attestation that, based on his training and experience, he knows cellular phones are often used to record, discuss, or facilitate sex crimes, the August Affidavit contains no similar allegation regarding computers, tablets, GoPro cameras, home security systems, or their associated storage devices. As such, according to Defendant, the August Affidavit failed to establish a nexus between the alleged crime and the videos retrieved from the DVR and SD card.

The August Affidavit, though identical to the July Affidavit in most respects, contains an additional "Items to be Searched" section where it lists the electronic items seized from Defendant's residence, including the DVR and relevant SD card. Further, the August Affidavit contains an updated "Items to be Seized" section, which includes, among other digital items to be seized, "audio and video clips related to the above-described criminal activity and further described in this affidavit in support of the search warrant, for the above-described item(s)." Regarding these digital items, Officer Gray provided in the application for the August Warrant that there was probable cause to believe the digital items constituted evidence of the crimes alleged against Defendant, as well as evidence of the perpetrator's identity. Finally, the "Probable Cause" section of the August Affidavit describes, just as in the July Affidavit, J.G.'s account—at the time alleged—of Defendant's crimes. New to this "Probable Cause" section, however, is an attestation to training and experience,

where it states that Officer Gray knows, based on training and experience, that cellular phones are often used to record, discuss, or facilitate sex crimes.

In consideration of this relevant information, we conclude the August Affidavit properly establishes a nexus between the digital items and the alleged crimes, and that it does so with less need for reasonable inference as required with the July Affidavit. *See Bailey*, 374 N.C. at 335, 841 S.E.2d at 280. The August Affidavit, like the July Affidavit, describes J.G.'s account of the incident. Given this description, we conclude the August Affidavit presented to the magistrate the underlying circumstances giving rise to, and necessary for a proper determination of, probable cause. *See Allman*, 369 N.C. at 296–97, 794 S.E.2d at 304–05. Additionally, the August Affidavit contains a particularized attestation of Officer Gray's training and experience which, like the training and experience attestation in *Allman*, provides an explanation of how Officer Gray's training and experience informed his belief that a search would reveal the evidence sought, and that said evidence would aid in the apprehension and conviction of the alleged criminal. *See id.* at 295–96, 794 S.E.2d at 305. Although containing a more particularized attestation of Officer Gray's training and experience, the August Affidavit still requires our consideration of one point of reasonable inference—specifically, whether the magistrate could reasonably infer, from Officer Gray's knowledge that *cellular phones* are often used to record, discuss, or facilitate sex crimes, that a search of *other* electronic items would reveal such incriminating evidence.

As a magistrate's reasonable inferences are viewed in light of the "factual and practical considerations of everyday life on which reasonable and prudent persons . . . act[,]" and not those of a legal technician, we conclude the magistrate could draw the necessary reasonable inferences to support a probable cause determination. *Sinapi*, 359 N.C. at 399, 610 S.E.2d at 365–66; *see also Riggs*, 328 N.C. at 221, 400 S.E.2d at 434. Officer Gray's attestation supported a reasonable belief the search of a cell phone would reveal relevant, incriminating evidence. From this attestation, the magistrate could reasonably infer that, as cell phones are often used to record sex crimes, so too are other electronic devices capable of recording audio and video footage. *See Sinapi*, 359 N.C. at 399, 610 S.E.2d at 365–66; *see also Riggs*, 328 N.C. at 221, 400 S.E.2d at 434. As such, the magistrate had reasonable cause to believe a search of the listed electronic data storage devices—namely, the DVR and relevant SD card—would, with fair probability, reveal evidence that aids in the apprehension or conviction of Defendant. *See Bright*, 301 N.C. at 249, 271 S.E.2d at 372; *see also McKinney*, 368 N.C. at 164, 775 S.E.2d at 824.

The August Affidavit, like the affidavit in *Allman*, gave the magistrate reasonable cause to believe a search of the DVR and SD card would reveal evidence of Defendant's alleged crimes. *See Allman,* 369 N.C. at 295–96, 794 S.E.2d at 305. We therefore conclude, according great deference to the magistrate's determination of probable cause, that under the totality of the circumstances, the August Affidavit established a nexus linking the digital items sought to the illegal activity, and the

magistrate therefore had a substantial basis to find probable cause. *See Worley*, 254 N.C. App. at 576, 803 S.E.2d at 416; s*ee also Bailey*, 374 N.C. at 335, 841 S.E.2d at 280; *see also Allman*, 369 N.C. at 296–97, 794 S.E.2d at 304–05. The trial court's finding of fact that the State met its evidentiary burden is supported by competent Record evidence, which in turn supports the trial court's conclusion of law that the August Warrant properly issued. *See Worley*, 254 N.C. App. at 576, 803 S.E.2d at 416. As such, we hold the trial court's denial of Defendant's motion to suppress the fruits of the August Warrant was not error, and certainly not plain error. *See id.* at 576, 803 S.E.2d at 416; *see also Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

## B. Ineffective Assistance of Counsel

Defendant argues, "to the extent trial counsel's failure to lodge a proper objection negatively impacts this Court's determination of [the motion to suppress issue], counsel rendered" IAC. We disagree and conclude Defendant did not receive IAC.

Under *Strickland v. Washington,* a defendant must satisfy a two-part test to show ineffective assistance of counsel: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984); *see also State v. Braswell*, 312 N.C. 553, 562, 324 S.E.2d 241, 248 (1985).

To demonstrate prejudice, a defendant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698. "[T]here is no reason for a court deciding an ineffective assistance of counsel claim to . . . address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697, 104 S. Ct. at 2069, 80 L. Ed. 2d at 699. "IAC claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required, i.e., claims that may be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing." *State v. Fair*, 354 N.C. 131, 166, 557 S.E.2d 500, 524 (2001) (citation omitted).

Here, as explained above, the July and August Affidavits supported the magistrate's finding of probable cause, such that issuance of the Warrants was proper. *See Worley*, 254 N.C. App. at 576, 803 S.E.2d at 416; s*ee also Bailey*, 374 N.C. at 335, 841 S.E.2d at 280; *Allman*, 369 N.C. at 296–97, 794 S.E.2d at 304–05. Had Defendant's trial counsel objected to the introduction of the challenged evidence, the result of the proceeding would have been the same. Thus, we can discern from the Record on appeal that Defendant was not prejudiced by his counsel's performance, and he did not receive IAC. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698; *see Fair*, 354 N.C. at 166, 557 S.E.2d at 524. Defendant's IAC claim is dismissed.

## C. Double Jeopardy

Defendant argues the trial court violated his right to be free of double jeopardy by entering judgment on both the first-degree kidnapping charge and the underlying sexual offense charges. After careful review, we agree.

A sentence that was "unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law" may be reviewed by this Court even where no objection or motion was made before the trial court. N.C. Gen. Stat. § 15A-1446(d)(18) (2023). This Court therefore reviews *de novo* Defendant's allegation that he was deprived of his right to be free of double jeopardy. *See State v. Wright*, 212 N.C. App. 640, 642, 711 S.E.2d 797, 799 (2011). "Under a *de novo* review, [this Court] considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Resendiz-Merlos*, 268 N.C. App. 109, 114, 834 S.E.2d 442, 446 (2019) (citation and internal quotation marks omitted).

Under both the United States and North Carolina Constitutions, the "right against double jeopardy . . . protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against *multiple punishments for the same offense.*" *State v. Tripp*, 286 N.C. App. 737, 740, 882 S.E.2d 75, 78 (2022) (emphasis added) (citation and internal quotation marks omitted). The elements of kidnapping are: (1) confining, restraining, or removing from one place to another; (2) any person sixteen

years of age or older and without such person's consent, or any person under sixteen years of age and without the consent of such person's parent or legal custodian; (3) if the act was for the purposes of facilitating the commission of a felony. *See State v. Pender*, 243 N.C. App. 142, 147, 776 S.E.2d 352, 357 (2015). "Kidnapping in the first-degree occurs when the defendant does not release the victim in a safe place or the victim is seriously injured or sexually assaulted." *State v. Martin*, 222 N.C. App. 213, 220, 729 S.E.2d 717, 723 (2012) (citation omitted). North Carolina courts have long held that where a sexual offense charge is the sole basis for elevating a kidnapping charge to one of the first-degree, judgment cannot be entered on both the sexual offense and first-degree kidnapping charges. *See State v. Freeland*, 316 N.C. 13, 23–24, 340 S.E.2d 35, 41 (1986); *see State v. Barksdale*, 237 N.C. App. 464, 473–74, 768 S.E.2d 126, 132 (2014).

Here, the trial court instructed the jury that, for Defendant to be convicted of first-degree kidnapping, it must find:

> First, that [D]efendant unlawfully removed a person from one place to another.
>
> Second, that the person had not reached her sixteenth birthday, and her parent or guardian did not consent to this removal.
>
> Third, that [D]efendant moved that person for the purpose of facilitating [D]efendant's commission of statutory rape or indecent liberties.
>
> [F]ourth, that this removal was a separate and complete act independent of and apart from the statutory rape

and/or indecent liberty.

And fifth, that the person had been sexually assaulted.

As in prior cases where we and our Supreme Court have held the trial court violated a defendant's right to be free from double jeopardy, the trial court's instructions here were such that Defendant could only have been convicted of first-degree kidnapping on the basis of one of the sexual offense charges for which he was also convicted and sentenced. *See Martin*, 222 N.C. App. at 220, 729 S.E.2d at 723; *see also Freeland*, 316 N.C. at 23–24, 340 S.E.2d at 41; *Barksdale*, 237 N.C. App. at 473–74, 768 S.E.2d at 132.

We therefore conclude the trial court violated Defendant's right to be free from double jeopardy, and accordingly vacate the trial court's sentencing order and remand for a resentencing hearing. *See Tripp*, 286 N.C. App. at 740, 882 S.E.2d at 78; *see also Freeland*, 316 N.C. at 23–24, 340 S.E.2d at 41; *Barksdale,* 237 N.C. App. at 473–74, 768 S.E.2d at 132. At the resentencing hearing, the trial court may either resentence Defendant for second-degree kidnapping, or it may arrest judgment on the indecent liberties and statutory rape charges. *See Freeland*, 316 N.C. at 23–24, 340 S.E.2d at 41; *see also Barksdale*, 237 N.C. App. at 473–74, 768 S.E.2d at 132.

## IV. Conclusion

The State presented substantial evidence to support a finding of probable cause for the magistrate's issuance of the Warrants, and Defendant therefore was not prejudiced by his counsel's failure to object to the introduction of the relevant

evidence. Accordingly, we hold the trial court did not plainly err in denying Defendant's motion to suppress evidence and conclude Defendant did not receive IAC. We further conclude, however, the trial court violated Defendant's right to be free from double jeopardy, and we therefore vacate the trial court's sentencing order and remand for resentencing hearing.

NO PLAIN ERROR in part, DISMISSED in part, and VACATED and REMANDED in part.

Judges STROUD and CARPENTER concur.